1

2

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 15, 2022

SEAN F. McAVOY, CLERK

3

4

5 　　　　　　　　　　UNITED STATES DISTRICT COURT

6 　　　　　　　　　EASTERN DISTRICT OF WASHINGTON

7 CORY M.,

8 　　　　　　　　　　　　　　Plaintiff,

9 　　　v.

10 COMMISSIONER OF SOCIAL
SECURITY,

11 　　　　　　　　　　　　　　Defendant.

12

| | |
|---|---|
| NO:  1:20-CV-3233-RMP | |
| ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT | |

13 　　　　BEFORE THE COURT, without oral argument, are cross-motions for

14 summary judgment from Plaintiff Cory M.[1], ECF No. 14, and the Commissioner of

15 Social Security ("Commissioner"), ECF No. 16.  Plaintiff seeks judicial review,

16 pursuant to 42 U.S.C. § 1383(c)(3), of the Commissioner's denial of his claim for

17 Social Security Income ("SSI") under Title XVI of the Social Security Act (the

18 "Act").  *See* ECF No. 14 at 2.  Having considered the parties' motions, the

19 _____

20 [1] In the interest of protecting Plaintiff's privacy, the Court uses Plaintiff's first
name and last initial.

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

administrative record, and the applicable law, the Court is fully informed.  For the reasons set forth below, the Court grants summary judgment in favor of the Commissioner.

## BACKGROUND

### *General Context*

Plaintiff applied for SSI on May 4, 2017, alleging disability beginning on May 4, 2017, when he was 25 years old.  Administrative Record ("AR")[2] 15, 215. Plaintiff maintained that he was unable to function and/or work due to attention deficit/hyperactivity disorder ("ADHD"), Asperger's syndrome, back pain, anxiety, bipolar disorder, depression, insomnia, suicidal ideations, and Fetal Alcohol Spectrum Disorder ("FAS") chemical dependency.  AR 369.  The application was denied initially and upon reconsideration, and Plaintiff requested a hearing.  *See* AR 160.

Plaintiff previously had filed an application for SSI on May 23, 2012, alleging disability beginning at birth, in 1991.  AR 62.  Plaintiff's initial application was denied by an ALJ, and the ALJ's decision was upheld on appeal to this Court in August 2017.  AR 106–07.

---

[2] The AR is filed at ECF No. 12.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

1    *Administrative Hearing*

2        On February 12, 2020, Plaintiff appeared at a hearing, represented by

3    counsel D. James Tree, before Administrative Law Judge ("ALJ") Virginia

4    Robinson in Yakima, Washington.  AR 38.  Plaintiff responded to questions from

5    ALJ Robinson and counsel.  The ALJ also heard from Vocational Expert ("VE")

6    Kimberly Mullinax, who responded to questions from the ALJ and Plaintiff's

7    counsel.

8        Plaintiff's first job was with Highland Fruit Growers from 2015 into 2016,

9    where he worked on the sorting line for apples.  AR 49.  Plaintiff testified that

10    Highland Fruit terminated his employment.  AR 39.  He then worked a series of

11    temporary jobs and received supportive employment services through Yakima

12    Neighborhood Health Services, which Plaintiff described as receiving assistance

13    finding a job and receiving guidance from a caseworker.  AR 50.  Plaintiff returned

14    to Highland Fruit in 2019, where he worked for the cherry season from early June

15    until mid-July stacking boxes onto pallets.  AR 37.  In fall 2019, Plaintiff worked

16    for Jewel Apples for approximately three months washing machinery.  AR 42–43.

17    Plaintiff stated that he found it challenging to work the nighttime shift while at

18    Jewel Apples and that he could finish his portion of cleaning a room in six hours,

19    while the management expected him to complete the work in four hours.  AR 43.

20    Plaintiff asserted that he was let go from his job at Jewel Apples with the

21

explanation that he had been assigned the easiest area to wash, but could not

maintain a reasonable pace, and was not getting along with his coworkers.  AR 44.

Plaintiff stated that he learned from past work experiences that he needs

"simple routine jobs" with "constant repetitive motion."  AR 47.

Plaintiff testified that he lacked housing at the time of the hearing and that

he was sleeping in parks or on the streets, except when his parents occasionally

paid for a hotel room for him.  AR 36.  His family lived in the Yakima area, but a

past falling out prevented Plaintiff from residing with them.  AR 36.  Plaintiff

further testified that he completed school through the ninth grade and had not

completed his General Education Development ("GED") diploma.  AR 57.

The ALJ posed several hypothetical scenarios for the VE to consider in

determining whether there are jobs available that Plaintiff could perform.  AR 52–

56.  The ALJ first asked the VE to consider an individual in a routine work

environment with infrequent changes, involving simple work-related decisions.

AR 52.  In this first scenario, the ALJ further limited the hypothetical worker to

occasional, superficial interaction with co-workers; no required teamwork, joint

decision-making, problem-solving, or socializing with coworkers; and no required

interaction with the public.  AR 52.  The VE responded that a worker with those

restrictions could perform all of Plaintiff's past work as well as work as: Kitchen

Helper, Specific Vocational Preparation ("SVP") level 2, strength level medium,

1  and approximately 200,000 positions nationwide; Cleaner, Hospital, SVP 2,

2  strength medium, and approximately 400,000 positions nationwide.  AR 53.

3      The ALJ asked the VE specifically about whether there was a suitable job

4  "that's not in a busy environment that has lots of other co-workers around" and

5  acknowledged that Hospital Cleaner is likely suitable.  AR 53.  The VE responded

6  that, in addition, Plaintiff's past work as an Industrial Cleaner was suitable, as is

7  Kitchen Helper and Laundry Worker because "there is no contact; they perform the

8  work independent of their co-workers or the other kitchen staff, so there really is

9  minimal contact there. . . . And same with the laundry work as well; they might

10  have three or four other people in the laundry room that they are washing and

11  folding clothes with, but there isn't any public contact or public entrance, and co-

12  workers are going to be at [sic] a handful at most."  AR 54.

13      Next, the ALJ asked the VE how up to two unscheduled absences per month

14  from work would affect the employability of a person with the other characteristics

15  previously outlined.  AR 55.  The VE opined that an employer will tolerate

16  approximately six unscheduled absences per year, with additional absences likely

17  leading to termination of employment.  AR 55.  The ALJ asked, in addition,

18  whether a person with twenty percent lower production than "an average worker"

19  would be able to maintain employment.  AR 55.  The VE responded that an

20  employer likely would tolerate only approximately ten percent off-task work per

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5

day on a persistent or ongoing basis due to the likely impact on productivity or productivity of others.  AR 55.

Plaintiff's counsel asked the VE whether a person who required training time one-on-one with the supervisor for up to 45 days would be able to maintain any of the jobs previously identified.  AR 56.  The VE responded that frequent contact with the supervisor during the training period, and occasional contact outside of the training period, is typical, and a person could receive time in addition to the typical amount as an accommodation.  AR 56.  Second, Plaintiff's counsel asked whether a person's need to have two extra breaks per day would be tolerated in any of the identified jobs.  AR 56.  The ALJ responded that breaks in addition to the two breaks and a meal period usually provided would not be tolerated on a persistent and ongoing basis.  AR 56.

***ALJ's Decision***

On June 3, 2020, ALJ Robinson issued an unfavorable decision.  AR 15–26. As an initial matter, the ALJ determined that there was no basis to reopen Plaintiff's prior application for benefits under Title XVI.  AR 15.  However, the ALJ further determined that Plaintiff rebutted the presumption of non-disability arising from the previous denial of benefits by presenting evidence of new impairments and new evidence regarding the severity of his limitations.  AR 15.

Proceeding to analyze Plaintiff's claim according to the five-step evaluation process, ALJ Robinson found:

**Step one:** Plaintiff has worked since filing for disability in 2017, including seasonal work at levels that may constitute substantial gainful activity ("SGA"). AR 18. However, there also have been "clear periods of time" during which Plaintiff was not working at SGA levels. AR 18. The ALJ determined that "regardless of whether any of the work was at SGA levels, the outcome would remain the same." AR 18.

**Step two:** Plaintiff has the following severe impairments that are medically determinable and significantly limit his ability to perform basic work activities: anxiety disorder, autism, and ADHD. AR 18. The ALJ determined that other maladies with which Plaintiff was diagnosed in the record, including hyperlipidemia, chronic right knee pain, major depressive disorder, are nonsevere. AR 18–19. The ALJ stated that she was considering all medically determinable impairments for purposes of the remaining steps, including those that are nonsevere. AR 19.

**Step three:** The ALJ concluded that Plaintiff's mental impairments, considered singly and in combination, did not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). AR 19. Specifically, the ALJ found

Plaintiff has a moderate limitation in: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  AR 19–20.  As a result of finding that Plaintiff does not have a marked limitation in a broad area of functioning, the ALJ found that Plaintiff does not meet the "paragraph B" criteria of having at least one extreme or two marked limitations in a broad area of functioning to meet the relevant mental impairment listings 12.06, 12.10, and 12.11.  AR 19–20.  The ALJ also explained that she had considered the "paragraph C" criteria and found that the record did not substantiate "the existence of a serious and persistent mental health disorder over a period of at least 2 years with both: (1) medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of the claimant's mental disorders; and (2) marginal adjustment, that is, a minimal capacity to adapt to changes in environment or to demands that are not already part of the claimant's daily life."  AR 20.

**Residual Functional Capacity ("RFC"):** The ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: "The claimant can perform simple, routine tasks in a routine work environment with infrequent changes and simple work related decisions.  The claimant can have occasional, superficial interaction with

coworkers, but not jobs requiring teamwork, joint decision making, problem solving, or socializing with coworkers, or supervising other employees.  He can have only incidental interaction with the public with no interaction with public required as part of the job duties."  AR 20 (punctuation as in original).

In determining Plaintiff's RFC, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his alleged symptoms "are not entirely consistent with the medical evidence and other evidence in the record" for several reasons that the ALJ discussed.  AR 21.

**Step four:** The ALJ found that Plaintiff is able to perform his past relevant work as an Agricultural Produce Sorter, Industrial Cleaner, and Material Handler. AR 24.

**Step five:** The ALJ found that Plaintiff has a limited education, can communicate in English, and was 26 years old when he filed his second application for benefits, which qualifies him as a "younger individual age 18-49." AR 24.  The ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform considering his age, education, work experience, and RFC.  AR 24–25.  Specifically, the ALJ recounted that given Plaintiff's ability to perform work at all exertional levels, considering Plaintiff's nonexertional limitations, the VE identified the following representative occupations that Plaintiff would be able perform with the RFC: Kitchen Helper,

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9

Laundry Worker 2, and Cleaner, Hospital.  AR 25.  The ALJ concluded that

Plaintiff had not been disabled within the meaning of the Social Security Act since

he filed his application on May 4, 2017.  AR 25.

The Appeals Council denied review.  AR 1–3.

## LEGAL STANDARD

### *Standard of Review*

Congress has provided a limited scope of judicial review of the

Commissioner's decision. 42 U.S.C. § 405(g).  A court may set aside the

Commissioner's denial of benefits only if the ALJ's determination was based on

legal error or not supported by substantial evidence.  *See Jones v. Heckler*, 760

F.2d 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)).  "The [Commissioner's]

determination that a claimant is not disabled will be upheld if the findings of fact

are supported by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572

(9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a

mere scintilla, but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d

1112, 1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02

(9th Cir. 1989).  Substantial evidence "means such evidence as a reasonable mind

might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402

U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as

the [Commissioner] may reasonably draw from the evidence" also will be upheld.

1  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court

2  considers the record as a whole, not just the evidence supporting the decisions of

3  the Commissioner.  *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).

4       A decision supported by substantial evidence still will be set aside if the

5  proper legal standards were not applied in weighing the evidence and making a

6  decision.  *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th

7  Cir. 1988).  Thus, if there is substantial evidence to support the administrative

8  findings, or if there is conflicting evidence that will support a finding of either

9  disability or nondisability, the finding of the Commissioner is conclusive.  *Sprague*

10 *v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir. 1987).

11      ***Definition of Disability***

12      The Social Security Act defines "disability" as the "inability to engage in

13 any substantial gainful activity by reason of any medically determinable physical

14 or mental impairment which can be expected to result in death or which has lasted

15 or can be expected to last for a continuous period of not less than 12 months."  42

16 U.S.C. §§ 423(d)(1)(A).  The Act also provides that a claimant shall be determined

17 to be under a disability only if his impairments are of such severity that the

18 claimant is not only unable to do his previous work, but cannot, considering the

19 claimant's age, education, and work experiences, engage in any other substantial

20 gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A).

21

Thus, the definition of disability consists of both medical and vocational

components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

### Sequential Evaluation Process

The Commissioner has established a five-step sequential evaluation process

for determining whether a claimant is disabled.  20 C.F.R. § 416.920.  Step one

determines if he is engaged in substantial gainful activities.  If the claimant is

engaged in substantial gainful activities, benefits are denied.  20 C.F.R. §

416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision

maker proceeds to step two and determines whether the claimant has a medically

severe impairment or combination of impairments.  20 C.F.R. § 416.920(a)(4)(ii).

If the claimant does not have a severe impairment or combination of impairments,

the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which

compares the claimant's impairment with listed impairments acknowledged by the

Commissioner to be so severe as to preclude any gainful activity.  20 C.F.R. §

416.920(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1.  If the impairment

meets or equals one of the listed impairments, the claimant is conclusively

presumed to be disabled.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work that he has performed in the past.  If the claimant can perform his previous work, the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).  At this step, the claimant's RFC assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy considering his residual functional capacity and age, education, and past work experience.  20 C.F.R. § 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation.  *Meanel*, 172 F.3d at 1113. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ISSUES ON APPEAL**

The parties' motions raise the following issues regarding the ALJ's decision:

1.      Did the ALJ erroneously assess Plaintiff's credibility?

2.      Did the ALJ erroneously discount medical source opinions?

3.      Did the ALJ erroneously fail to fully credit lay witness evidence?

**DISCUSSION**

***Plaintiff's Subjective Symptom Testimony***

Plaintiff argues that the ALJ committed reversible error by failing to provide sufficient reasons to discount Plaintiff's allegations.  ECF No. 14 at 4.  Plaintiff first argues that the ALJ's finding that Plaintiff had only minimal psychiatric observations and mental status exam findings is flawed as a matter of law because an ALJ cannot reject subjective testimony solely because it is not supported by objective evidence.  *Id.* at 4 (citing *Rollins v. Massanari*, 261 F.3d 853, 856–57 (9th Cir. 2001).  Moreover, Plaintiff argues that the ALJ recognized that Plaintiff "has presented distressed, depressed, anxious, with a flat or constricted affect, with limited insight and judgment, dysphoric, with difficulty in concentration and abstract thought, and making errors on serial 3s." *Id.* (citing AR 21–22).  Plaintiff argues that the record going back to Plaintiff's childhood offers significant objective evidence of impairment that is contrary to the ALJ's finding and cites to the record for evidence that Plaintiff has exhibited developmental delays, suicidal

1    tendencies, maladaptive personality traits, and other indications of depression or

2    other personality disorder.  *Id.* at 5–6 (citing AR 469–70, 483, 492, 502, 508, 529,

3    537, 551–53, 566, 570, 579, 625, 647, 677–78, and 731).

4        Second, Plaintiff argues that the ALJ erred in discounting Plaintiff's

5    testimony based on a finding that Plaintiff insufficiently engaged in mental health

6    treatment.  ECF No. 14 at 6.  Plaintiff maintains that the ALJ's finding is based on

7    the case management note from August 2018 indicating that Plaintiff was a no-

8    show at the first scheduled appointment after an assessment by Central Washington

9    Comprehensive Mental Health ("Comprehensive Mental Health") developing a

10   treatment plan.  *Id.* (citing AR 22); *see also* AR 730–36.  Plaintiff contends that the

11   record also demonstrates that he continued to see a treating psychologist, Dr.

12   Olmer, at Yakima Neighborhood Health Services from approximately May 2018

13   into 2019 and that Plaintiff had an extensive history of psychiatric treatment

14   beginning when Plaintiff was in the seventh grade.  *Id.* at 6–7 (citing AR 586, 624,

15   and 730).

16       Third, Plaintiff asserts that the ALJ erroneously discounted Plaintiff's

17   allegations based on alleged "discrepancies."  ECF No. 17 at 3–4 (citing AR 22).

18   Plaintiff argues that evidence of Plaintiff's failed attempts to sustain employment is

19   not in conflict with Plaintiff's testimony and is, rather, further probative of

20   Plaintiff's claim that he cannot work.  ECF No. 14 at 8.  Moreover, Plaintiff

21

1    maintains that any discrepancies in the record regarding Plaintiff's marijuana use

2    are minor and do not directly relate to Plaintiff's testimony as to his disability

3    limitations because Plaintiff "has never indicated he abused the substance or that it

4    impacted his capacity to work." *Id.* at 9 (citing *Shrestha v. Holder*, 590 F.3d 1034,

5    1043–44 (9th Cir. 2010), for the proposition that trivial inconsistencies should not

6    form the basis for an adverse credibility determination in administrative

7    proceedings).

8         Defendant responds that an ALJ may discount subjective complaints on the

9    basis that they do not comport with the medical evidence, as the ALJ did here.

10   ECF No. 16 at 3.  Defendant further argues that the ALJ appropriately considered

11   Plaintiff's failure to show up for treatment beyond one therapy session at

12   Comprehensive Mental Health because this failure to follow professional advice

13   undermines the alleged severity of Plaintiff's condition.  ECF No. 16 at 5–6.

14   Defendant further cites to portions of the record that support the ALJ's finding that

15   Plaintiff has made inconsistent statements about his ability to work, namely that he

16   reported doing work source classes and that he was focused on obtaining new

17   employment after he filed his application for benefits.  Defendant maintains that

18   the ALJ also reasonably found inconsistent Plaintiff's statements that he was fired

19   from a job at Highland Fruit in 2016 and could not do the job due to his conditions,

20

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

but testified that Highland Fruit rehired him in 2019 to work the cherry season.  *Id.*
at 6 (citing AR 37, 39, 369).

To reject a claimant's subjective complaints, the ALJ must provide
"specific, cogent reasons for the disbelief."  *Lester v. Chater*, 81 F.3d 821, 834 (9th
Cir. 1995) (internal citation omitted).  The ALJ "must identify what testimony is
not credible and what evidence undermines the claimant's complaints."  *Id*.
Subjective symptom evaluation is "not an examination of an individual's
character," and an ALJ must consider all of the evidence in an individual's record
when evaluating the intensity and persistence of symptoms.  *See* Social Security
Regulation ("SSR") 16-3p, 2016 SSR LEXIS 4 (2016).

In deciding whether to accept a claimant's subjective pain or symptom
testimony, an ALJ must perform a two-step analysis.  *Smolen v. Chater*, 80 F.3d
1273, 1281 (9th Cir. 1996).  First, the ALJ must evaluate "whether the claimant
has presented objective medical evidence of an underlying impairment 'which
could reasonably be expected to produce the pain or other symptoms alleged.'"
*Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v.
Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  Second, if the first test is met and
there is no evidence of malingering, "the ALJ can reject the claimant's testimony
about the severity of [his] symptoms only by offering specific, clear and
convincing reasons for doing so."  *Smolen*, 80 F.3d at 1281.  The Social Security

1  Administration modified the way it analyzes a claimant's subjective symptom

2  testimony in March 2016, leaving behind the term "credibility" and clarifying that

3  "adjudicators will not assess an individual's overall character or truthfulness."

4  SSR 16-3p, 2016 SSR LEXIS 4, at *1, 2016 WL 1119029 (Mar. 16, 2016).

5  Nevertheless, Ninth Circuit caselaw has continued to use the term "credibility" and

6  has noted that SSR 16-3p is consistent with existing Ninth Circuit precedent. *See*

7  *Trevizo v. Berryhill*, 871 F.3d 664, 678 n. 5 (9th Cir. 2017).

8      Plaintiff asserts that his overall mental condition, as affected by ADHD,

9  Asperger's syndrome, back pain, anxiety, bipolar disorder, depression, insomnia,

10  suicidal ideations, prevents him from working.  Plaintiff testified that "simple

11  routine jobs" and "simple routines" are best for him because he needs "constant

12  repetitive motion."  AR 47.  Plaintiff further stated that he has a hard time being

13  around people.  AR 47.

14      The ALJ found that "regular notations in the claimant's treatment records of

15  minimal psychiatric observations are inconsistent with" Plaintiff's allegations of

16  extremely limiting mental symptoms.  AR 21.  The ALJ cited to medical records

17  indicating a "relatively benign presentation" by Plaintiff at medical appointments

18  that "does not corroborate his description of marked/severe social, cognitive, and

19  mental dysfunction."  AR 21 (citing to records indicating Plaintiff was cooperative,

20

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18

polite, and displayed average eye contact, normal memory, logical thought processes with providers).

An ALJ may consider whether subjective symptom testimony is consistent with objective medical evidence.  20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); SSR 16-3p, 2016 SSR LEXIS 4 at *15, available at 2017 WL 5180304, at *7–8 (Oct. 25, 2017).  Alongside other permissible reasons, inconsistencies between a claimant's allegations and objective medical evidence may be used to discount a claimant's testimony.  *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197–98 (9th Cir. 2004).  However, a lack of objective medical evidence may not form the ALJ's sole reason for discounting a claimant's testimony.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

Reviewing the ALJ's decision and the administrative record, substantial evidence supports the ALJ's determination that Plaintiff's subjective complaints exceed the limitations substantiated by objective medical evidence and notations regarding Plaintiff's presentation for examiners and treatment providers.  *See* AR 738 (noting in August 2018 that Plaintiff had no current suicidal ideation, had insight into his depression, was engaged throughout his treatment session, and presented in a "neutral to slightly distressed mood and congruent affect"); 586–87 (treatment record noting that Plaintiff appeared "re-energized" by taking time to be in nature and away from others to "reset his mind" and recording unremarkable

1    findings regarding Plaintiff's mental status).  Therefore, the Court finds that the

2    ALJ could partially rely on the examination and treatment records to discount

3    Plaintiff's subjective symptom testimony.  *See Batson*, 359 F.3d at 1197–98.

4          Substantial evidence also supports that Plaintiff made difficult-to-reconcile

5    statements regarding his alleged inability to work, from which the ALJ reasonably

6    could draw the conclusion that Plaintiff's subjective complaints should not be fully

7    credited.  Plaintiff worked for Highland Fruit in 2015 and 2016, prior to applying

8    for disability benefits in May 2017, and testified that he was fired from that work

9    and that he had could not maintain the expected pace.  AR 39–41.  However,

10   Plaintiff also testified that he received unemployment benefits after that job ended

11   in 2016 and that Highland Fruit rehired Plaintiff to work the cherry season in 2019.

12   AR 40.  Plaintiff also testified that he is suited to "simple routine jobs" with

13   "constant repetitive motion."  AR 47.  The Court finds the ALJ's reasoning that

14   Plaintiff made inconsistent claims about whether he can sustain competitive

15   employment to amount to a specific, cogent reason for discounting Plaintiff's

16   testimony.  *See Lester*, 81 F.3d at 834.

17         With respect to Plaintiff's engagement in treatment, the Court agrees that the

18   ALJ's evaluation of the record was incomplete.  The ALJ discounted Plaintiff's

19   credibility, in part, based on a finding that the "claimant's minimal treatment with

20   noncompliance is not consistent with his allegations."  AR 22.  The ALJ further

21

1    found: "He engaged in therapy in August 2018, but then no showed without

2    explanation. By February 2019, he was discharged due to leaving against

3    advice/dropout after only one therapy appointment."  AR 22 (internal citations to

4    record omitted).

5         While the ALJ's finding is supported by the record with respect to Plaintiff's

6    treatment at Comprehensive Mental Health, AR 730–36, Plaintiff is correct that the

7    finding overlooks treatment records showing that Plaintiff attended therapy

8    sessions with Dr. Olmer at Yakima Neighborhood Health Services from

9    approximately April 2018 through June 2019.  AR 576–94. However, the Court

10   finds any error by the ALJ in not explicitly recognizing Plaintiff's participation in

11   counseling with Dr. Olmer to be harmless given that removing this justification for

12   discounting Plaintiff's testimony leaves legitimate, sufficient reasons for

13   discounting the testimony intact, as discussed above.  Moreover, substantial

14   evidence supports the ALJ's conclusion that Plaintiff had access to more mental

15   health treatment, through the treatment plan formulated by staff at Comprehensive

16   Mental Health, but did not show up for his appointments and lost contact with the

17   provider.  AR 730–36 (prescribing six months of outpatient mental health

18   treatment and identifying a source of funding, and anticipating the likelihood of

19   three to six months of additional treatment, under a different source of available

20   funding).  This is substantial evidence supporting the ALJ's conclusion, and the

21

Court is bound to uphold the ALJ's conclusion, where, as here, "evidence is susceptible to more than one rational interpretation." *Ford*, 950 F.3d at 1156 (internal quotation omitted). Plaintiff points to his extensive history of mental health treatment, beginning as an adolescent, as evidence that further treatment at Comprehensive Mental Health would not have been productive. *See* ECF No. 17 at 3. However, the Court notes that Plaintiff's present application for SSI is based on changed mental health circumstances from his previously denied application. *See* AR 15. What is more, it is not this Court's role to second guess the treatment prescribed by Plaintiff's treatment providers or to fault the ALJ for finding Plaintiff inconsistent for not following through on treatment that he sought.

Reviewing the ALJ's decision, the Court identifies several clear, specific, and convincing reasons, in the context of the full record, for not fully accepting Plaintiff's statements concerning the intensity, persistence, and limiting effects of his claimed symptoms and their effect on his ability to work. Accordingly, the Court does not find error in the ALJ's treatment of Plaintiff's subjective symptoms testimony.

### *Medical Source Opinions*

Plaintiff argues that the ALJ improperly assessed the medical opinions of Steven Olmer, Psy.D., Tasymn Bowes, Psy.D., and Andrea Shadrach, Psy.D., and that this Court should credit their opinions that Plaintiff has disabling limitations,

as a matter of law.  ECF No. 14 at 10–12.  Defendant contends that the ALJ reasonably discounted these medical source opinions.  ECF No. 16 at 11–17.

The regulations that took effect on March 27, 2017, provide a new framework for the ALJ's consideration of medical opinion evidence and require the ALJ to articulate how persuasive she finds all medical opinions in the record, without any hierarchy of weight afforded to different medical sources.  *See* Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017); 20 C.F.R. § 416.920c.  Instead, for each source of a medical opinion, the ALJ must consider several factors, including supportability, consistency, the source's relationship with the claimant, any specialization of the source, and other factors such as the source's familiarity with other evidence in the claim or an understanding of Social Security's disability program.  20 C.F.R. § 416.920c(c).

Supportability and consistency are the "most important" factors, and the ALJ must articulate how she considered those factors in determining the persuasiveness of each medical opinion or prior administrative medical finding.  20 C.F.R. § 416.920c(b)(2).  With respect to these two factors, the regulations provide that an opinion is more persuasive in relation to how "relevant the objective medical evidence and supporting explanations presented" and how "consistent" with evidence from other sources the medical opinion is.  20 C.F.R. § 416.920c(c)(1).

1   The ALJ may explain how she considered the other factors, but is not required to

2   do so, except in cases where two or more opinions are equally well-supported and

3   consistent with the record.  20 C.F.R. § 416.920c(b)(2), (3).

4        Courts also must continue to consider whether the ALJ's finding is

5   supported by substantial evidence.  *See* 42 U.S.C. § 405(g) ("The findings of the

6   Commissioner of Social Security as to any fact, if supported by substantial

7   evidence, shall be conclusive . . . .").  Prior to issuance of the new regulations, the

8   Ninth Circuit required an ALJ to provide clear and convincing reasons to reject an

9   uncontradicted doctor's opinion and provide specific and legitimate reasons where

10   the record contains a contradictory opinion.  *See Murray v. Heckler*, 722 F.2d 499,

11   501–02 (9th Cir. 1983).  The Ninth Circuit has not yet ruled on whether its prior

12   caselaw requiring an ALJ to provide "clear and convincing" or "specific and

13   legitimate reasons" in the analysis of medical opinions still applies.  *See Thomas S.*

14   *v. Comm'r of Soc. Sec.*, No. C20-5083 RAJ, 2020 U.S. Dist. LEXIS 166729, at \*6

15   (W.D. Wash. Sep. 11, 2020).

16        While the parties do not dispute that the new regulations apply to Plaintiff's

17   claim, they disagree as to the extent that the prior Ninth Circuit standards for

18   rejecting medical opinion evidence continue to apply.  *See* ECF Nos. 14 at 11; 16

19   at 11.  However, courts in this District, as well as other district courts within the

20   Ninth Circuit, previously have concluded that the new regulations displace the

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 24

prior Ninth Circuit caselaw.  *See Emilie K. v. Saul*, No. 2:20-CV-00079-SMJ, 2021 U.S. Dist. LEXIS 43139, 2021 WL 864869, *3-4 (E.D. Wash. Mar. 8, 2021), *reversed on other grounds*, No. 21-35360, 2021 U.S. App. LEXIS 36540 (9th Cir. Dec. 10, 2021); *Timothy Mitchell B. v. Kijakazi*, 2021 U.S. Dist. LEXIS 151191, 2021 WL 3568209, at *5 (C.D. Cal. Aug. 11, 2021) (deferring to the new regulations); *but see Kathleen G. v. Comm'r of Soc. Sec.,* 2020 U.S. Dist. LEXIS 210471, 2020 WL 6581012, at *3 (W.D. Wash. Nov. 10, 2020) (applying the specific and legitimate standard under the new regulations).  This Court applies the standard set by the new regulations to Plaintiff's claims, but also considers whether the outcome would differ under the earlier Ninth Circuit caselaw setting standards for evaluation of medical opinions.

Dr. Olmer

Plaintiff's treating psychologist Dr. Olmer completed a mental source statement in June 2018 in which he opined that the cumulative effect of Plaintiff's impairments likely would result in Plaintiff being off task approximately 21-30 percent of a 40-hour work schedule, but would not result in any absenteeism.  AR 521.  Dr. Olmer assessed Plaintiff's limitations due to his mental impairments as ranging from insignificant to marked, with the majority of Plaintiff's limitations assessed as mild or moderate.  AR 519–21.  In May 2019, Dr. Olmer completed a second mental source statement, opining that the cumulative effect of Plaintiff's

impairments likely would result in Plaintiff being off task less than twelve percent of a 40-hour work schedule and likely would result in Plaintiff missing one day of work per month.  AR 564.  In the second statement, Dr. Olmer assessed Plaintiff's limitations due to his mental impairments as ranging from insignificant to mild. AR 562–64.

ALJ Robinson addressed Dr. Olmer's opinions as follows:

> In June 2018, Steven Olmer, PsyD, opined marked ratings and off-task 21-30% behavior, but provided no explanation other than commenting that while the claimant may be impacted by mental health and his ability to perform at work, it would not likely effect [sic] his work schedule. His opinion is not persuasive because it is inconsistent with his May 2019 mental status examination when he indicated only mild severity. It is also inconsistent with the minimal observations of psychiatric difficulty by treating providers, minimal treatment, and inconsistent statements by the claimant.

AR 23.

As required by the new regulations, the ALJ considered whether Dr. Olmer's opinions were consistent with each other and with the other evidence in the record, and whether they were supportable.  Dr. Olmer's first and second mental source statements assess Plaintiff's limitations very differently, and neither contains an explanation of how those limitations, many of them assessed as mild or insignificant, support Dr. Olmer's ultimate conclusions regarding the cumulative effect on Plaintiff's performance or attendance at work.  AR 519–21, 562–64. Plaintiff assigns error to the ALJ's determination that Dr. Olmer's May 2019

opinion that Plaintiff likely would miss one day of work per month is unpersuasive.  However, Dr. Olmer opined the year before, in June 2018, that Plaintiff likely would not miss work due to his impairments.  AR 519–21.  The ALJ's approach to reconciling the two incongruent opinions by Dr. Olmer is reasonable and is accompanied by clear and convincing reasons.  Under either the new regulations, or prior Ninth Circuit precedent, the Court finds no error with respect to the ALJ's treatment of Dr. Olmer's medical opinions.

Dr. Bowes

Washington State Department of Social and Health Services psychological examiner Dr. Bowes opined in April 2018 that the combined impact on Plaintiff's ability to sustain employment of all of Plaintiff's diagnosed impairments is severe. AR 569–70.  The ALJ found: "Notably, the claimant's presentation at that time appeared to be an outlier rather than his typical presentation, i.e. poor eye contact was noted as well as 'odd' presentation, clear difficulties with reciprocal communication, and scattered thought process. Even so, the claimant's presentation appears less restrictive than opined. Further, her opinion is not consistent with the minimal observations of psychiatric difficulty by treating providers, minimal treatment, and inconsistent statements by the claimant."  AR 23.

1    The ALJ's reasoning demonstrates that the ALJ considered the

2    persuasiveness of Dr. Bowes' opinion in relation to the other medical evidence and

3    to Plaintiff's, which the ALJ summarized in detail throughout her decision.  In

4    particular, substantial evidence supports that poor communication and an illogical

5    thought process was not how Plaintiff usually presented to treatment providers.

6    *See* AR 21 (citing to numerous records).  Therefore, the Court finds that the ALJ

7    appropriately considered the supportability and consistency of Dr. Bowes' opinion

8    and also provided specific and legitimate reasons for her treatment of Dr. Bowes'

9    assessment.

10                    Dr. Shadrach

11    Consultative psychological examiner Dr. Shadrach opined in October 2017

12    that Plaintiff's mental health conditions have a "Moderate/Marked" impact on his

13    "functioning."  AR 494.  The ALJ found Dr. Shadrach's opinion "not persuasive

14    because it is not adequately supported by her mental status examination and did not

15    offer narrative explanation for the deviation. It is also inconsistent with minimal

16    observations of psychiatric difficulties by treatment providers, with a mental status

17    examination just months earlier, with the claimant's minimal treatment, and with

18    inconsistent statements by the claimant."  AR 23 (internal citation omitted).

19    Given the importance of supportability to an ALJ's consideration of medical

20    source opinions, the ALJ reasonably found that the unremarkable findings during

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 28

1   the mental status examination performed by Dr. Shadrach did not provide a

2   foundation for finding that Plaintiff is moderately or markedly limited in his ability

3   to function.  *See* AR 22 (noting that Dr. Shadrach recorded that Plaintiff "was

4   pleasant and cooperative with normal speech, intact remote and recent memory,

5   and only on error on serial 3 subtractions, but still demonstrating a simple 3-step

6   command successfully").  As noted above, there is also substantial evidence in the

7   record to support the ALJ's reasoning that Dr. Shadrach's assessment is not

8   consistent with the minimal observations of psychiatric difficulties by treatment

9   providers and with inconsistent statements about an ability to function at work by

10   Plaintiff.  Consequently, the Court finds no error in ALJ Robinson's treatment of

11   Dr. Shadrach's opinions.

12        ***Plaintiff's Mother's Function Report***

13        Plaintiff argues that the ALJ erroneously discounted his adoptive mother's

14   written statements "'for the same reasons'" that she rejected Plaintiff's subjective

15   statements.  ECF No. 17 at 11 (quoting AR 24).

16        To legitimately discount lay witness testimony, an ALJ generally must

17   articulate reasons germane to each witness.  *Molina v. Astrue*, 674 F.3d 1104, 1114

18   (9th Cir. 2012).  However, where an ALJ provides clear and convincing reasons

19   for rejecting a claimant's own subjective complaints, those reasons are germane

20   reasons for rejecting statements by a lay witness that repeat the claimant's own

21

1   subjective complaints.  *Valentine v. Commissioner*, 574 F.3d 685, 694 (9th Cir.

2   2009).  The ALJ need not address the lay witness's testimony on an individualized

3   testimony in those circumstances.  *Id.*

4          The ALJ wrote: "I also considered the lay witness statements. The

5   claimant's mother . . . echoed much of the claimant's statements, but otherwise

6   stated much of his symptoms and functioning are unknown. Her statements that

7   align with the claimants are not persuasive for the same reasons the claimant's

8   statements are not reliable, and she otherwise acknowledges being unaware of the

9   claimant's limitations."  AR 24 (internal citations omitted).

10         Having reviewed the third-party function report at issue, the Court notes that

11  Plaintiff's mother represented that she is unaware of what Plaintiff does from the

12  time he wakes up until he goes to bed, and is unaware of whether Plaintiff takes

13  medication, prepares his own meals, completes household chores, shops, or

14  handles his own finances.  AR 381–88.  Plaintiff's mother acknowledges that she

15  sees Plaintiff approximately once per month or at family gatherings and writes that

16  Plaintiff "knows that he has the right to make his own decisions" and has "chosen

17  to live on the street or wherever he can rather than living somewhere where he

18  would have to follow other peoples' instructions."  AR 385, 388.  In sum,

19  Plaintiff's mother concedes that she does not have an opportunity to observe

20  Plaintiff regularly.  Accordingly, Plaintiff's mother's lack of knowledge of

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 30

Plaintiff's daily activities and limitations is a germane reason for discounting her statements.

Moreover, the function report by Plaintiff's mother repeats the limitations asserted by Plaintiff's subjective symptom statements. *See* AR 381 (alleging that Plaintiff is unable to work because he is limited in his ability to focus, stay on task, or understand all aspects of what is going on or what he is instructed to do). The ALJ was permitted to discount these statements regarding limitations for the same clear and convincing reasons that she discounted Plaintiff's own testimony. *See Valentine*, 574 F.3d at 694. Therefore, the Court finds no error in the ALJ's treatment of Plaintiff's mother's function report.

### Conclusion

The Court empathizes with Plaintiff's circumstances and acknowledges that Plaintiff suffers from significant impairments that will require ongoing treatment. However, based on a review of the ALJ's opinion and the record in this matter, the ALJ reasonably incorporated Plaintiff's limitations into Plaintiff's RFC and found that there are jobs that Plaintiff can perform. Having addressed all issues raised by the parties' cross-motions for summary judgment, the Court denies Plaintiff's Motion for Summary Judgment, ECF No. 14, and grants Defendant Commissioner's Motion for Summary Judgment, ECF No. 16.

/ / /

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 31

Accordingly, **IT IS HEREBY ORDERED**:

1.      Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

2.      Defendant's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

3.      Judgment shall be entered in Defendant's favor.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order, provide copies to counsel, and **close the file**.

**DATED** February 15, 2022.


_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
United States District Judge

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 32